UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION
CASE NO:

**AMANDA BOZILE,**
     Plaintiff,

v.

**CRAFTSMAN CONTRACTORS, LLC** and
**KELLOGG & KIMSEY, INC.,**
     Defendants.

_____/

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff, Amanda Bozile, sues the Defendants, Craftsmen Contractors, LLC and Kellogg & Kimsey, Inc., and alleges:

I.  Nature of the Action

1. This is an employment discrimination and retaliation action arising from Defendants' unlawful treatment of Plaintiff while she worked as a finish carpenter/laborer on a Kellogg & Kimsey, Inc. project through Craftsmen Contractors, LLC.

2. Defendants acted as Plaintiff's joint employers. Craftsmen Contractors, LLC employed and paid Plaintiff, while Kellogg & Kimsey, Inc. controlled

Plaintiff's day-to-day work, worksite, schedule, supervision, duties, and removal from the project.

3. Plaintiff alleges that she was subjected to sex-based harassment, adverse treatment, and retaliation after she rejected and opposed unwelcome sexual and flirtatious conduct by Kellogg & Kimsey supervisor Jonathan Lee, who exercised supervisory authority over Plaintiff at the worksite.

4. Plaintiff brings this action under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq., and the Florida Civil Rights Act of 1992, Fla. Stat. §§ 760.01–760.11.

II. Jurisdiction and Venue

5. This Court has subject-matter jurisdiction over Plaintiff's Title VII claims under 28 U.S.C. § 1331 and 42 U.S.C. § 2000e-5(f)(3).

6. This Court has supplemental jurisdiction over Plaintiff's Florida Civil Rights Act claims under 28 U.S.C. § 1367 because those claims arise from the same case or controversy as Plaintiff's federal claims.

7. Venue is proper in the Middle District of Florida under 28 U.S.C. § 1391 and 42 U.S.C. § 2000e-5(f)(3) because the unlawful employment practices occurred in this District, relevant employment records are maintained or administered in this District, and Defendants conduct business in this District.

8. Plaintiff requests a jury trial on all issues so triable.

III. Parties

9. Plaintiff Amanda Bozile is an individual resident of Florida. At all relevant times, Plaintiff was an employee within the meaning of Title VII and the Florida Civil Rights Act.

10. Defendant Craftsmen Contractors, LLC is a business entity that provides temporary labor and workers to other entities, including general contractors. Craftsmen Contractors, LLC conducted business in Florida and employed Plaintiff.

11. Defendant Kellogg & Kimsey, Inc. is a Florida business entity headquartered in Sarasota, Florida, and is a general contracting and construction management firm. Kellogg & Kimsey, Inc. conducted business in Florida and exercised control over Plaintiff's worksite and day-to-day work.

12. At all relevant times, each Defendant had the requisite number of employees to qualify as an employer under Title VII and the Florida Civil Rights Act.

13. At all relevant times, Defendants acted directly and through their agents, employees, supervisors, managers, and representatives.

IV. Exhaustion of Administrative Remedies

14. Plaintiff timely filed Charges of Discrimination with the Equal Employment Opportunity Commission and the Florida Commission on Human Relations against both Defendants.

15. Plaintiff filed a Charge of Discrimination against Craftsmen Contractors, LLC, EEOC Charge No. 511-2025-04634, alleging sex discrimination and retaliation.

16. Plaintiff filed a Charge of Discrimination against Kellogg & Kimsey, Inc., EEOC Charge No. 511-2025-04635, alleging sex discrimination and retaliation.

17. Plaintiff's Charges alleged that the most recent discriminatory act occurred on or about May 3, 2025, and Plaintiff signed the Charges on or about July 10, 2025.

18. Plaintiff received Notices of Right to Sue from the EEOC for each Charge on or about February 4, 2026 and February 10, 2026.

19. This action is filed within ninety days of Plaintiff's receipt of the Notices of Right to Sue.

20. To the extent required, Plaintiff has satisfied all conditions precedent to bringing this action, and all such conditions precedent have occurred, have been performed, have been waived, or have otherwise been satisfied.

V. Joint Employer Allegations

21. Plaintiff re-alleges paragraphs 1 through 20 as if fully set forth herein.

22. Defendants jointly employed Plaintiff during the relevant period.

23. Craftsmen Contractors, LLC hired Plaintiff, placed her on the Kellogg & Kimsey project, communicated with her regarding work placement, and paid or administered her wages.

24. Kellogg & Kimsey, Inc. accepted Plaintiff's services on its project, controlled the worksite, assigned and directed Plaintiff's day-to-day work, controlled the

conditions under which Plaintiff performed her work, supervised Plaintiff through its supervisor Jonathan Lee, and removed Plaintiff from the worksite.

25. Craftsmen Contractors, LLC and Kellogg & Kimsey, Inc. had a contractual relationship under which Craftsmen supplied workers to Kellogg & Kimsey and Kellogg & Kimsey supervised and controlled those workers at the job site.

26. Kellogg & Kimsey exercised direct supervisory authority over Plaintiff through Jonathan Lee, including authority over her work assignments, daily schedule, work hours, job site access, and continued work at the project.

27. Craftsmen retained authority over Plaintiff's employment relationship, including placement on assignments, communications concerning work opportunities, and post-incident reassignment efforts.

28. Defendants' respective control over Plaintiff's employment was sufficient to make them joint employers under Title VII and the Florida Civil Rights Act.

29. Defendants are jointly and severally liable for the unlawful employment practices alleged in this Complaint.

VI. Factual Allegations

30. Plaintiff began working for Craftsmen Contractors, LLC on or about February 6, 2025, as a finish carpenter.

31. Plaintiff was assigned to work on a Kellogg & Kimsey project at an assisted living facility.

32. At the Kellogg & Kimsey project, Plaintiff worked under the supervision and direction of Jonathan Lee, a Kellogg & Kimsey supervisor.

33. Plaintiff was led to believe that she would be hired or promoted into an assistant supervisor role working under Lee.

34. Lee told Plaintiff that he would pay her approximately $30.00 to $32.00 per hour and that Plaintiff would travel with him for work as his assistant.

35. Lee also met with Plaintiff and her son outside of work, including at Applebee's, to discuss the job he wanted Plaintiff to perform or obtain.

36. Beginning on or about April 15, 2025, Lee began flirting with Plaintiff and sending suggestive emojis and communications at all hours of the day and night.

37. Lee stared at Plaintiff while she was bent over cleaning the floor, which made Plaintiff uncomfortable.

38. Plaintiff attempted to maintain professional boundaries and refused to reciprocate Lee's flirtatious conduct.

39. Lee became upset when Plaintiff did not flirt back and when Plaintiff attempted to keep the relationship professional.

40. On or about May 2, 2025, Lee asked Plaintiff why she would not be flirtatious with him at work.

41. Plaintiff responded in substance that "work is work."

42. Immediately after Plaintiff rejected Lee's flirtatious conduct and reinforced professional boundaries, Lee's demeanor changed, and he became short-tempered toward Plaintiff.

43. When Plaintiff requested permission to take lunch, Lee sent Plaintiff home for the remainder of the day.

44. Over the next several hours, Lee called Plaintiff approximately seventy times and sent numerous text messages.

45. Plaintiff also received calls from Michael McBride, who worked for Craftsmen Contractors, LLC and was Plaintiff's contact or supervisor through Craftsmen.

46. Plaintiff told McBride that she understood she was to report to Lee for everything because that was how the work arrangement had operated.

47. Plaintiff sought to speak privately with McBride and asked about potential work opportunities in case she was no longer permitted to remain at the Kellogg & Kimsey project.

48. Plaintiff reported to McBride that Lee was acting irrationally because Plaintiff refused to engage in flirtatious behavior with him at work.

49. Plaintiff alleges that McBride advised her to keep the situation quiet and expressed concern about losing clients if Plaintiff made a big deal out of the situation.

50. Plaintiff felt threatened, intimidated, and unsupported.

51. On or about May 5, 2025, Plaintiff returned to work at the Kellogg & Kimsey project.

52. Lee's hostile behavior and attitude toward Plaintiff continued.

53. Plaintiff learned that Lee admitted he wanted to ask Plaintiff out and became upset when Plaintiff did not reciprocate his advances.

54. Lee threatened Plaintiff's job and acted aggressively toward Plaintiff.

55. Lee changed Plaintiff's work hours multiple times and displayed aggression when Plaintiff did not respond to him as he desired.

56. When Plaintiff arrived at work on May 5, 2025, Lee was not present, and Plaintiff began painting.

57. When Lee arrived, Plaintiff observed that his eyes were bloodshot and that he had an attitude toward her.

58. Lee asked Plaintiff how long it would take her to paint upstairs.

59. Plaintiff responded that she did not have a punch list and therefore could not estimate the time required because she did not know everything that needed to be painted.

60. Lee initially went to print the punch list, then changed his mind and told Plaintiff in substance, "You know what? Just hand in your keys today's gonna be your last day."

61. As Plaintiff rinsed out her paintbrush, Lee screamed at Plaintiff, "I don't know who the hell you think you are," and called her a "peon."

62. Lee aggressively grabbed a speaker from Plaintiff's hand and smashed it on the ground while screaming at Plaintiff to leave the job site.

63. Plaintiff attempted to call McBride for assistance, but he did not answer at that time.

64. Lee did not allow Plaintiff to gather her belongings and insisted that she leave immediately.

65. Plaintiff felt intimidated and unsafe.

66. Later that day, McBride contacted Plaintiff about retrieving her tools.

67. Plaintiff told McBride that she was uncomfortable returning to the jobsite because of Lee's conduct.

68. Plaintiff alleges that McBride was dismissive of her concerns and protective of Lee and/or the client relationship rather than addressing the harassment and retaliation Plaintiff had reported.

69. As a result of Lee's conduct and Defendants' actions and inactions, Plaintiff was removed from the Kellogg & Kimsey project and suffered loss of work, loss of wages, emotional distress, humiliation, inconvenience, and other damages.

70. Defendants knew or should have known of the harassment, discrimination, and retaliation and failed to take prompt, effective remedial action.

71. Defendants' stated or anticipated reasons for Plaintiff's removal or termination, including alleged attendance or scheduling issues, are pretextual or otherwise insufficient to excuse Defendants' unlawful conduct.

VIII. Counts

Count I — Sex Discrimination / Sexual Harassment Under Title VII Against Both Defendants

72. Plaintiff re-alleges paragraphs 1 through 71 as if fully set forth herein.

73. Plaintiff is a woman and is protected from sex discrimination under Title VII.

74. Defendants were Plaintiff's joint employers within the meaning of Title VII.

75. Plaintiff was subjected to unwelcome sex-based conduct, including flirtatious advances, suggestive communications, unwanted attention, differential

treatment, hostility, intimidation, and removal from the worksite after she refused to reciprocate sexual or flirtatious conduct.

76. The unwelcome conduct was based on Plaintiff's sex and on Plaintiff's rejection of sex-based advances and expectations.

77. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive work environment.

78. Alternatively, Plaintiff suffered tangible employment action when she was sent home, removed from the project, and/or terminated from the worksite after rejecting and opposing Lee's conduct.

79. Lee acted as Plaintiff's supervisor and exercised authority over Plaintiff's day-to-day work, schedule, job site access, and continued work at the Kellogg & Kimsey project.

80. Defendants are vicariously liable for Lee's conduct because Lee was acting as a supervisor and because Plaintiff suffered tangible employment action.

81. Defendants are also liable because they knew or should have known of the unlawful conduct and failed to take prompt, effective remedial action.

82. Defendants' conduct violated Title VII.

83. As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, inconvenience, and other compensable losses.

### Count II — Retaliation Under Title VII Against Both Defendants

84. Plaintiff re-alleges paragraphs 1 through 71 as if fully set forth herein.

85. Plaintiff engaged in protected activity under Title VII by rejecting and opposing unwelcome sex-based conduct, by maintaining professional boundaries, by stating that "work is work," and by reporting Lee's conduct and the connection between his conduct and her refusal to engage in flirtatious behavior.

86. Defendants knew or should have known of Plaintiff's protected activity.

87. Plaintiff suffered materially adverse actions, including being sent home, being subjected to hostility and intimidation, being removed from the worksite, losing work opportunities, and/or being terminated from the assignment.

88. There was a causal connection between Plaintiff's protected activity and the adverse actions, including close temporal proximity between Plaintiff's rejection and opposition to Lee's conduct and Lee's decision to send Plaintiff home and end her work at the project.

89. Defendants' stated or anticipated reasons for the adverse actions are pretextual.

90. Defendants' conduct violated Title VII's anti-retaliation provisions.

91. As a direct and proximate result of Defendants' retaliation, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, inconvenience, and other compensable losses.

Count III — Sex Discrimination / Sexual Harassment Under the Florida Civil Rights Act Against Both Defendants

92. Plaintiff re-alleges paragraphs 1 through 71 as if fully set forth herein.

93. Plaintiff is a woman and is protected from sex discrimination under the Florida Civil Rights Act.

94. Defendants were Plaintiff's joint employers within the meaning of the Florida Civil Rights Act.

95. Plaintiff was subjected to unwelcome sex-based conduct, including flirtatious advances, suggestive communications, unwanted attention, differential treatment, hostility, intimidation, and removal from the worksite after she refused to reciprocate sexual or flirtatious conduct.

96. The unwelcome conduct was based on Plaintiff's sex and on Plaintiff's rejection of sex-based advances and expectations.

97. The conduct was sufficiently severe or pervasive to alter the terms and conditions of Plaintiff's employment and create an abusive work environment.

98. Alternatively, Plaintiff suffered tangible employment action when she was sent home, removed from the project, and/or terminated from the worksite after rejecting and opposing Lee's conduct.

99. Lee acted as Plaintiff's supervisor and exercised authority over Plaintiff's day-to-day work, schedule, job site access, and continued work at the Kellogg & Kimsey project.

100. Defendants are vicariously liable for Lee's conduct because Lee was acting as a supervisor and because Plaintiff suffered tangible employment action.

101.Defendants are also liable because they knew or should have known of the unlawful conduct and failed to take prompt, effective remedial action.

102.Defendants' conduct violated the Florida Civil Rights Act.

103.As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, inconvenience, and other compensable losses.

### Count IV — Retaliation Under the Florida Civil Rights Act Against Both Defendants

104.Plaintiff re-alleges paragraphs 1 through 71 as if fully set forth herein.

105.Plaintiff engaged in protected activity under the Florida Civil Rights Act by rejecting and opposing unwelcome sex-based conduct, by maintaining professional boundaries, by stating that "work is work," and by reporting Lee's conduct and the connection between his conduct and her refusal to engage in flirtatious behavior.

106.Defendants knew or should have known of Plaintiff's protected activity.

107.Plaintiff suffered materially adverse actions, including being sent home, being subjected to hostility and intimidation, being removed from the

worksite, losing work opportunities, and/or being terminated from the assignment.

108.There was a causal connection between Plaintiff's protected activity and the adverse actions, including close temporal proximity between Plaintiff's rejection and opposition to Lee's conduct and Lee's decision to send Plaintiff home and end her work at the project.

109.Defendants' stated or anticipated reasons for the adverse actions are pretextual.

110.Defendants' conduct violated the Florida Civil Rights Act's anti-retaliation provisions.

111.As a direct and proximate result of Defendants' retaliation, Plaintiff suffered damages, including lost wages, lost benefits, emotional distress, humiliation, inconvenience, and other compensable losses.

VIII.Damages

112.As a result of Defendants' unlawful conduct, Plaintiff has suffered and continues to suffer damages, including but not limited to:

a. lost wages, back pay, front pay, and lost employment benefits;

b. emotional distress, mental anguish, humiliation, embarrassment, inconvenience, and loss of enjoyment of life;

c. damage to career opportunities and employment prospects;

d. compensatory damages;

e. punitive damages to the extent permitted by law;

f. prejudgment and post-judgment interest;

g. reasonable attorneys' fees and costs; and

h. all other relief available under Title VII, the Florida Civil Rights Act, and applicable law.

IX. Prayer for Relief

WHEREFORE, Plaintiff, Amanda Bozile, respectfully requests that this Court enter judgment in her favor and against Defendants, Craftsmen Contractors, LLC and Kellogg & Kimsey, Inc., jointly and severally, and award the following relief:

A. A declaration that Defendants violated Title VII and the Florida Civil Rights Act;

B. Back pay, front pay, lost benefits, and all other equitable monetary relief;

C. Compensatory damages for emotional distress, humiliation, inconvenience, and other non-economic injuries;

D. Punitive damages to the extent permitted by law;

E. Prejudgment and post-judgment interest;

F. Reasonable attorneys' fees and costs;

G. Trial by jury on all issues so triable; and

H. Such other and further relief as the Court deems just and proper.

X. Jury Demand

Plaintiff demands trial by jury on all issues so triable.

**DATED MAY 5, 2026**                               **FOR PLAINTIFF:**

BY: */s/ G. Ware Cornell, Jr.*
G. Ware Cornell, Jr. | FBN: 203920
ware@warecornell.com
**CORNELL & ASSOCIATES, P.A.**
2645 Executive Park Drive, Weston, Fla. 33331
(954) 618-1041